UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ V. AYALA, An Individual,<br><br>Plaintiff,<br><br>v.<br><br>ACE CASH EXPRESS, INC., an entity, and DOES 1-25, inclusive,<br><br>Defendant. | Case No.: 17-cv-2166-AJB-WVG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (Doc. No. 5)** |

Presently before the Court is Defendant Ace Cash Express, Inc.'s ("ACE") motion to compel arbitration. (Doc. No. 5.) For the reasons set forth below, the Court **GRANTS** ACE's motion.

## I. BACKGROUND

Ayala began working for ACE on September 24, 1998. (Doc. No. 5 at 2.) Ayala worked continuously for ACE until July 10, 2005, when she worked for another franchise of ACE. (*Id*.) On December 17, 2007, ACE rehired Ayala. (*Id*.) At that time, ACE and Ayala signed the Employee Dispute Resolution Program ("EDRP"), which signaled that Ayala was expressly bound and required to use the EDRP procedures in any legal dispute. (*Id*.) The EDRP was a term and condition of her employment. (*Id*.) On March 7, 2014, ACE and Ayala signed the arbitration agreement ("agreement") in question. (*Id*.) The agreement states that:

1

> you and ACE agree to resolve any and all claims, disputes, or controversies arising out of or relating in any way to your employment with ACE, including the termination of your employment, exclusively by arbitration to be administered by a neutral dispute resolution agency agreed upon by the parties at the time of the dispute.

(Doc. No. 7, ex. B.) The agreement also states that it is enforceable and interpreted via the Federal Arbitration Act ("FAA"). (*Id.*)

## II.  LEGAL STANDARDS

The FAA governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. Under the FAA § 2, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id*. at § 4.

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.*

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). There is generally a strong policy favoring arbitration, which requires any doubts

to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

### III. DISCUSSION

ACE asserts that the FAA and California law require arbitration, and that the agreement is not procedurally or substantively unconscionable under California law. (Doc. No. 5.) Ayala claims that the agreement is both procedurally and substantively unconscionable. (Doc. No. 7 at 2–13.)

Under California law, unconscionability has both procedural and substantive elements, where procedural focuses on oppression or surprise due to unequal bargaining power, and substantive focuses on overly harsh or one-sided results. *Mohamed v. Uber Tech. Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016). Both procedural and substantive unconscionability must be present for a contract to be found unconscionable, but they do not need to be present to the same degree. *Id*. There is a sliding scale between the two, where the more substantively unconscionable the contract or section, the less procedural unconscionability is required to declare unenforceability, and vice versa. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). The party asserting unconscionability bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

**A. Procedural Unconscionability**

ACE asserts that the agreement was neither oppressive nor a surprise to Ayala. ACE also asserts that, even if the contract is one of adhesion, the agreement cannot be unenforceable just because it is a required condition of employment. (Doc. No. 5 at 9.) Ayala counters by arguing that the agreement is oppressive since she had no opportunity to negotiate the provision and had to accept it as a term of employment. (Doc. No. 7 at 3.) Ayala also argues that the agreement was a surprise since the agreement came almost

sixteen years after she began working for ACE. (*Id*. at 4.)

Procedural unconscionability occurs when an agreement is oppressive or comes as a surprise to another party. *Mohamed*, 848 F.3d at 1210. Oppression arises from an inequality of bargaining power, resulting in no real negotiation and an absence of meaningful choice; surprise involves the terms of the bargain being hidden in a prolix printed form drafted by the party in the superior bargaining position. *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) (internal quotations omitted). "The adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon,* 846 F.3d at 1261–62.

There is a small oppressive feature to this agreement. ACE held most of the bargaining power in its transaction with Ayala because ACE drafted the agreement, gave her the agreement on a "take-it-or-leave-it" basis, and retained the bargaining power from the agreement. (Doc. Nos. 7-1 ¶ 5; 5-3 Ex. A at 2.) This agreement, however, cannot be considered a "surprise" to Ayala. Even though the agreement was presented years after she began working at ACE, the terms of the agreement were not hidden in a lengthy contract. Rather they were listed in the second paragraph of the full text of the agreement. (Doc. No. 5-3 Ex. A at 1.) The agreement was also given separately to Ayala, who had an opportunity to review the document before signing. (Doc. No. 7-1 ¶ 5–6.)

The element of oppression is present, but because the contract is nothing more than adhesive, procedural unconscionability is low at most. When the degree of procedural unconscionability of an adhesion agreement is low, the agreement will be enforceable unless the degree of substantive unconscionability is high. *Poublon*, 846 F.3d at 1263.

**B. Substantive Unconscionability**

ACE argues that the agreement is not substantively unconscionable because the agreement contains a modicum of bilaterality, such that the agreement applies to both ACE and Ayala. Ayala counters that the agreement is substantively unconscionable for three reasons. First, the agreement requires arbitration for the claims of Ayala but a choice of forums for the claims of ACE. Second, the limitation on discovery is inadequate for Ayala

4

to pursue her claims fairly. And last, enforcement of the agreement would not allow for Ayala to bring her claim for breach of contract.

Substantive unconscionability pertains to the fairness of an agreement's actual terms, whether the terms are overly harsh or so one sided as to shock the conscience. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246 (2012). Unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain. *Sanchez,* 61 Cal. 4th at 911 (2015). Not all one-sided contract provisions are unconscionable, which is why formulations of unconscionability focus on "*overly* harsh," "*unduly* oppressive," or "*unreasonably* favorable." *Sanchez*, 61 Cal. 4th at 911 (emphasis retained).

ACE's argument is more persuasive here. There is no question that the agreement gives ACE a greater benefit than Ayala. However, there is still a modicum of bilaterality that is satisfied by the contract. While most of the claims covered by the agreement would be the claims brought by Ayala, and most of the claims not covered by the agreement would be the type brought by ACE, the coverage still leaves open the possibility that ACE would be forced into arbitration by the agreement. (Doc. No. 5-2 at 18.) The list of claims in the agreement is not an exhaustive list of claims that can be brought by Ayala or ACE. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1249 (reiterating that the list of arbitratible claims was not intended to be exhaustive, but only highlighted certain types of claims that employees often bring.) Also, the discovery limitations on Ayala do not preclude Ayala from getting the discovery she needs. *See Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 690 (2000) ("the fact that an arbitration may limit a party's discovery rights is not 'substantive unconscionability.' If it were, *every* arbitration clause would be subject to an unconscionability challenge on that ground.") Ayala provides ample evidence to show that more discovery will be necessary, and that substantial need should be seen by the arbitrator. She would still have the opportunity to get additional discovery through various devices. (Doc. No. 5-2 at 18.)

Finally, arbitration would not prevent Ayala from bringing her claim for breach of

5

contract. Although she argues that because the arbitrator cannot "modify or alter the at will status of PLAINTIFF, this means that her claim for breach of contract, in arbitration, would be null and void." (Doc. No. 7 at 16.) However, she cites no authority to support this assertion. The agreement states, "[t]he Arbitrator shall not have the authority to add to, amend, or modify existing law or to alter the at-will status of the employment relationship between you [Ayala] and ACE." (*Id.*) As ACE notes, this provision does not forgo a breach claim, but "precludes the arbitrator from altering the *law* or the *facts*. (Doc. No. 9 at 7 (emphasis in original).) There is nothing inherent in the provision preventing Ayala from bringing a breach of contract claim.

While the terms of the agreement might be considered somewhat harsh to Ayala, there is enough leeway granted by the agreement to keep it from arising to an "overly harsh" or "unduly oppressive" agreement. Therefore, any substantive unconscionability is low on a sliding scale.

## IV. CONCLUSION

The minuteness of the procedural unconscionability, added together with only a moderate implication of substantive unconscionability, are not enough to defeat the agreement. Based on the foregoing reasons, the Court **GRANTS** ACE's motion to compel arbitration. (Doc. No. 5.) While the parties are in arbitration, the Court **STAYS** this action. The parties are **ORDERED** to file a joint status report with the Court every 90 days to apprise the Court of the status of the arbitration's proceedings, including the schedule of hearing dates. The first report is due **90 days** from the date of this order, and every 90 days thereafter until the case is dismissed.

**IT IS SO ORDERED.**

Dated: March 15, 2018

Hon. Anthony J. Battaglia
United States District Judge